**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT D. MCPHAIL, | ) | CASE NO. 3:22-CV-02214-JGC |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

**I. Introduction**

Plaintiff, Robert D. McPhail ("McPhail" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On August 22, 2019, Claimant filed an application for DIB, alleging a disability onset date of August 31, 2013. (ECF No. 9, PageID #: 85). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On September 23, 2021, an ALJ held a telephonic hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). At the hearing, Claimant amended his alleged onset date to March 10, 2017. (*Id.* at PageID #: 86). On

November 10, 2021, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 82-104). The ALJ's decision became final on October 4, 2022, when the Appeals Council declined further review. (*Id.* at PageID #: 71-73).

On December 7, 2022, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 11, 15, 16). Claimant asserts the following assignments of error:

> (1) Whether the ALJ failed to identify substantial evidence supporting the RFC finding, and whether the ALJ failed to properly develop the record regarding Plaintiff's physical abilities and limitations.

(ECF No. 10 at 1).

### III. Background

#### A. Previous Application

Claimant previously applied for DIB alleging a disability onset date of August 21, 2013. (ECF No. 9, PageID #: 85). Following a hearing before an ALJ, the ALJ determined that Claimant was not under a disability from August 21, 2013, until March 9, 2017. (*Id.*) Relevant to this opinion, the 2017 ALJ decision:

> found that the claimant had the following severe impairments: diabetes mellitus, type II, with neuropathy; degenerative disc disease of the lumbar and cervical spine; chronic pain syndrome; neuralgia, neuritis, and radiculitis; idiopathic peripheral neuropathy; lumbar and cervical spondylosis; spinal enthesopathy lumbar and cervical; peripheral lower extremity neuropathy; neuropathy of the fourth and fifth finger, bilaterally; mild-moderately severe sensorineural hearing loss bilaterally, moderate on the left; status post anterior cervical discectomy and fusion at C6-67; and obesity. As a result of those impairments, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: he can occasionally push and pull in bilateral lower extremities; frequently use foot controls bilaterally; occasionally climb ramps and stairs and crouch; never climb ladders, ropes, and scaffolds or crawl; frequently balance, stoop, and kneel; never be exposed to unprotected heights, dangerous moving mechanical parts, or operate a motor vehicle; frequently be exposed to extreme cold, extreme heat, and vibration; moderate exposure to noise (by "moderate," the undersigned means business offices where typewriters are used,

>department stores, grocery stores, light traffic, fast food restaurants at off-hours); and the claimant requires the use of a cane for his right dominant hand to walk and balance.

(*Id.*).

### B. Relevant Allegations

The ALJ summarized Claimant's disability allegations:

>In the initial application and at the hearing, the claimant alleged that he was unable to work due to diabetic neuropathy from the waist down, degenerative disc disease in the back, hearing loss, diabetes, depression, and anxiety. Furthermore, in the adult disability and function reports, the claimant stated that he suffers from obesity, chronic pain in the back and the neck, as well as symptoms of radiculopathy. At the hearing, the claimant testified that he has chronic pain in his legs that make it difficult for him to stand, walk, or climb stairs. Additionally, the claimant reported that he has arthritis in his back that hurts all the time and makes it difficult for him to sit or stand for extended periods. Continuing, the claimant reported muscle spasms in his legs, pain in his feet, and swelling in the lower extremities. He also testified to tremors in the lower extremities. In terms of physical functions, the claimant testified that he could only stand or walk for about 20 minutes, sit for 20 minutes before needing to get up and move around, and lift maybe 10-15 pounds. In terms of his mental functions, the claimant stated that he is somewhat withdrawn, has anxiety and depression, and indicated that he has difficulties sustaining attention and concentration. The claimant also reported that he is distracted by pain and needs frequent breaks. In terms of his diabetes, the claimant reported that he is on insulin and has to check his medications/blood sugars daily. Finally, the claimant testified that he has limited hearing and indicated that he requires the use of a cane for ambulation/balance. (Ex. B 1 E, B5E, B7E, and Testimony).

(ECF No. 9, PageID #: 94-95).

### C. Relevant Medical Evidence

In addressing Claimant's second application at issue here, the ALJ noted that the relevant time period was from March 10, 2017, the date after the previous ALJ decision and the amended alleged onset date, until December 31, 2019, the date last insured. (ECF No. 9, PageID #86). The ALJ summarized Claimant's health records and symptoms:

>Although a number of medical records fall outside the period under consideration for disability, the undersigned notes that the claimant was evaluated at Taylor

3

Chiropractic in January 2013 due to complaints of neck and back pains. (Ex. B6F). Following a clinical interview and assessment, he was diagnosed with somatic dysfunction of the cervical region, cervicalgia, somatic dysfunction of the thoracic and lumbar region, and lumbago. *(Id.,* p. 2 and 27). Additionally, treatment notes from October 2014 show that the claimant was evaluated for hearing loss and was diagnosed with bilateral tinnitus and decreased hearing, left greater than right. (Ex. B5F, p. 4). Treatment notes from February 2015 also show that the claimant was referred to the Van Wert County Hospital for updated x-rays of the cervical spine, which revealed stable postoperative changes at C5 through C7, with some mild progressive degenerative disc disease at C5 and C6. However, the imagery failed to show any evidence of acute abnormalities. (Ex. B2F, p. 4). Additional medical records from 2016 show that he received pain management services at the Van Wert County Hospital for lumbar radiculopathy and peripheral neuropathy in the lower extremities resulting in associated difficulties with walking. (Ex. BlF). As part of his treatment regimen, he was referred for pain management, injections, radiofrequency ablation, and physical/aquatic therapy. *(Id.,* p. 4, 7, 12, and 46). In addition to his lumbar issues, the medical records show that he was assessed with neuropathy of 4th and 5th finger, bilaterally. *(Id.,* p. 10).

The undersigned notes that in October 2016, the claimant underwent bilateral facet joint injections in the lumbar spine at L4-5 and at L5-Sl. (Ex. BlF, p. 120, 125). He also underwent medical branch blocks at L3, L4, and L5 in December 2016. *(Id.,* p. 114, 119). Then, on December 31, 2016, the record reflects that the claimant underwent MRI scans of the lumbar spine. (Id., p. 112). The results of the MRI scans revealed progressive degenerative changes at L5-S 1, with central disc protrusion compressing the descending left S1 nerve root and at least abutting the descending right Sl nerve root, which correlated with the claimant's reported symptoms. *(Id.,* p. 113). For treatment, he was referred for diagnostic epidural steroid injections at L5 and SL *(Id.,* p. 105, 110).

In January 2017, the claimant was evaluated at the Van Wert Community Hospital for an assessment of his diabetes mellitus. (Ex. B2F, p. 169-185). During the assessment, he was noted to have elevated blood sugars: however, he was on medications and had no vision changes, burning in the extremities, chest pains, constant hunger, dental disease, or gastric problems. Additionally, the claimant had no complaints of heat or cold intolerance, episodes of hypoglycemia, polydipsia, or polyphagia. The claimant also had no complaints of dizziness, weakness in the extremities, gait problems, or memory impairments. *(Id.,* p. 169-170). Furthermore, the claimant's physical examination was found to be essentially benign, with no evidence of diabetic ulcerations, neurological impairments, or evidence of weakness. *(Id.,* p. 174). His diabetic medications were then re-adjusted for therapeutic effect and he was recommended to diet, exercise, and monitor his blood glucose levels. *(Id.,* p. 174). Later in the month, he was placed on an insulin pump and was noted to have complaints of persistent lower back pains. The records also show that he was placed on medications for

depression. *(Id., p. 192-202)*.

In March 2017, the claimant underwent an updated MRI scan of the lumbar spine. (Ex. BlF, p. 103-104). The results of the lumbar MRI showed mild degenerative disc disease at L5-Sl, with an asymmetrical disc bulge on the left greater than on the right that touches the thecal sac, but does not significantly displace it. The MRI scans also showed that he had some evidence of mild facet degenerative changes, but no evidence of stenosis or foraminal narrowing. Finally, the MRI scans showed that he had moderate sacroiliac osteoarthritis. *(Id.,* p. 103-104). For treatment, he was referred for radiofrequency ablation, which he received at L3, L4, and L5 on the left in April 2017 and on the right in May 2017. *(Id.,* p. 90, 95, 96, and 101). The claimant was also continued on medications for diabetic neuropathy, neuralgia, and depression, which he described as helping. (Ex. B2F, p. 268-281). He was also continued on an insulin pump, with his progress reports showing some improvements in his diabetic control. *(Id.,* p. 268). Furthermore, the medical records show that he was referred for a sleep study in April 2017, and was placed on a CPAP machine. *(Id.,* p. 293-304).

The undersigned notes that in May 2017, the claimant was re-evaluated at the Van Wert Community Hospital outpatient offices and was found to have elevated blood glucose levels. (Ex. B2F, p. 318). Following the assessment, changes were recommended for his insulin pump settings. *(Id.,* p. 318-328). At his follow up appointment in July 2017, his insulin and diabetic control appeared to be improving. *(Id.,* p. 339). However, he continued to report difficulties with ambulation and standing secondary to lower back pains. He was then recommended for diagnostic SI joint injections, which he received in July 2017. (Ex. B lF, p. 84 and 89). The claimant also received sacroiliac joint injections in August 2017. *(Id.,* p. 78 and 83). The claimant reported some benefit from the injections, so he was referred for neurolysis of the left middle cluneal nerve under fluoroscopic guidance in October 2017. *(Id.,* p. 72 and 77). He also received radiofrequency ablation of the right L5, Sl, S2, and S3 nerves in December 2017. *(Id.,* p. 65 and 69). At the same time, he was continued on an insulin pump and diabetic medications. (Ex. B2F, p. 373-380). His medical records regarding his diabetes show that aside from some elevated blood glucose levels, the claimant was doing well overall, with no acute symptoms but for some occasional tremors when his blood sugars were running low. *(Id.,* p. 398-412, 424- 438). He was then recommended to continue with diet, exercise, and medication management of his diabetes mellitus, with no changes to his insulin pump. *(Id.,* p. 458-467).

In December 2017, the claimant was re-evaluated at the Van Wert Community Hospital outpatient offices as part of his follow up and continuum of care for diabetes. (Ex. B2F, p. 488). At the follow up examination, he continued to report some difficulties with managing his diabetes and reported some lower back and lower extremity pains. Furthermore, the treatment notes show that he was using a cane for ambulation and difficulties with walking. A physical examination showed that he had some edema in the lower extremities. However, the medical

records also show that he was doing well on medications for depression and that his sleep was improving with the use of a CPAP machine. The medical records also show that his cholesterol was under control and that he reported some benefit from injections for his lower back pains. He was then assessed with uncontrolled diabetes mellitus and with neuralgia, and was recommended for ongoing medication management and monitoring of his condition. *(Id.,* p. 488-494). As part of his treatment regime, he was referred for medial branch blocks at L3, L4, and L5, which he received in January 2018. (Ex. BlF, p. 53, 57, and 58). A review of records from the Van Wert Community Hospital show that he reported improvements in his diabetic control in February 2018, though he continued to report significant lower back and lower extremity pains secondary to neuralgia. (Ex. B2F, p. 77-92). He was then referred for radiofrequency ablation of the L3, L4, and L5 nerves, which he received in March 2018. (Ex. BlF, p. 46 and 51).

The undersigned notes that records from the Van Wert Community Hospital outpatient offices show that the claimant's diabetes mellitus was generally well controlled throughout most of 2018. (Ex. B2F). Specifically, medical records from August 2018 show that the claimant's diabetes was stable overall, though he continued to have some foot pains associated with neuralgia and lower back pains associated with degenerative disc disease and neuropathy. *(Id.,* p. 29-30). The August 2018 treatment notes also show that the claimant reported that his depression was stable on mediations. However, the claimant reported difficulties with standing for extended periods and reported that he had to change positions frequently. *(Id.,* p. 29-30). Medical records from November 2018 show that the claimant was assessed with cellulitis in the left greater toe secondary to an ingrown toenail, with follow up records showing positive monofilament tests consistent with neuropathy. *(Id.,* p. 23-28). Despite these acute symptoms, the records show that the claimant remained ambulatory, though with a mildly abnormal gait. *(Id.,* p. 23-24). He was then continued on diabetic medications, with records from February 2019 showing some improvements following adjustments in his insulin pump. *(Id.,* p. 16-18).

In February 2019, the claimant was evaluated at Van Wert Medical Services due to complaints of a sinus infection. (Ex. B4F, p. 73-76). During the office visit, he reported some congestion associated with his sinus infection, but also reported elevated sugars associated with his diabetes mellitus. The claimant also reported some residual lower back pains and was described as using a cane for ambulation. Upon physical examination, he was noted to have a wide-based gait and was found to have some diminished sensations in the lower extremities, with positive monofilament testing in the mid to proximal feet bilaterally. Additionally, he was noted to have some situational based anxiety secondary to recent stressors. However, denied any symptoms of depression and was found to have grossly normal memory, judgment, and affect. *(Id.,* p. 76). His physical examination also showed that he had normal range of motion and function in the bilateral upper extremities. He was then recommended for an insulin pump adjustment, which he received the following day. (Ex. B2F, p. 14-16; Ex. B4F, p. 68, 73-76). At the

evaluation for the insulin pump adjustment, the claimant was noted to have a full range of motion in all extremities, normal motor strength, normal gait and station, and normal sensations. (Ex. B4F, p. 68).

In May 2019, the claimant underwent a foot evaluation at Van Wert Medical Services due to complaints of second and third toe pains. (Ex. B4F, p. 58-59). During the evaluation, the claimant reported that he fell while wearing steel toed shoes resulting in some pain in the mid to distal metatarsals, as well as some significant bruising. The claimant also reported some pain and numbness in his feet, difficulties with standing and walking for extended periods, and some generalized arthralgias in the lower back. However, the claimant reported that his blood sugars were under generally good control, with no reports of significant elevations recently. The claimant also reported improvements in his mood and sleep with medications and the use of a CPAP machine, though he continued to experience some fatigue. He was then treated conservatively for his complaints of lower extremity pains and was recommended for follow up in four weeks. *(Id.,* p. 59-61). At the follow up, he continued to report some foot pains and was recommended for diagnostic x-rays. The results of the x-rays showed an early healing nondisplaced fracture traversing through the neck of the second metatarsal. (Ex. B2F, p. 11-13). He was then recommended to wear a hard soled boot and was recommended for follow up. He was also continued on medications for his diabetes mellitus and lower back pains. *(Id.,* p. 13).

In August 2019, the claimant was re-evaluated at Van Wert Medical Services as part of his follow up for diabetes mellitus and his second toe fracture. (Ex. B4F, p. 40-42). At the follow up examination, he was noted to use a cane for balance, particularly on uneven surfaces. The claimant also continued to report lower back and leg pains, making it difficult for him to walk. Additionally, he reported some occasional and mild tremors, as well as some symptoms of fatigue. However, the medical records show that he denied any recent falls and reported that Neurontin and Lyrica were helpful at addressing his neurological pains. The claimant also reported continued benefit from the use of the insulin pump and medications for his anxiety and depression. He was then continued on medications, with recommendations for follow up in September 2019 for possible medication adjustments. *(Id.,* p. 41). At the follow up appointment, he reported some issues with his sleep apnea mask causing a rash around his face, but otherwise reported improvements in his numbness, tingling in the extremities, and neuropathy. The claimant also denied any acute symptoms associated with his diabetes, degenerative disc disease, or neuritis. He was then continued on medications and was recommended for follow up in October 2019. *(Id.,* p. 40-41). At his follow up, he reported some continued difficulties with walking, standing, lifting, pushing, and pulling for any length of time. He also reported some neuropathy and pain in the neck and lower extremities. However, he had no evidence of gait disturbances and continued to report some benefit from his medications. A new insulin pump was ordered for the claimant and he was recommended for routine follow up. *(Id.,* p. 24). Medical records from November 2019 also show that after

receiving the new insulin pump, his blood glucose levels decreased. The records also show that he had no complaints of back pains, joint pains, numbness, tingling, or loss of sensations in the extremities. *(Id.,* p. 19- 20).

(ECF No. 9, PageID #: 95-99).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2019.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 10, 2017 through his date last insured of December 31, 2019 (20 CFR 404.1571 *et seq.).*

3. Through the date last insured, the claimant had the following severe impairments: diabetes mellitus, type II with neuropathy; degenerative disc disease of the lumbar and cervical spine; chronic pain syndrome; neuralgia, neuritis; radiculopathy; idiopathic peripheral neuropathy; lumbar and cervical spondylosis; spinal and enthesopathy lumbar and cervical; peripheral lower extremity neuropathy; neuropathy of 4th and 5th finger, bilaterally; mild-moderately severe sensorineural hearing loss bilaterally, moderate on the left; status post anterior cervical discectomy and fusion, C6-7; and obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except He can occasionally push and pull in the bilateral lower extremities. He can frequently use foot controls bilaterally. He can occasionally climb ramps and stairs and crouch. He should never climb ladders, ropes, and scaffolds or crawl. He can frequently balance, stoop, and kneel. He should never be exposed unprotected heights, dangerous moving mechanical parts, or operate a motor vehicle. He can frequently be exposed to extreme cold, extreme heat and vibration. He can be exposed to a moderate amount of noise. By "moderate", the undersigned means business offices where typewriters are used, department stores, grocery stores, light traffic, fast food restaurants at off hours. The claimant requires use of a cane in his right dominant hand to walk and balance.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 29, 1973 and was 46 years old, which is defined as a younger individual age 18-44, on the date last insured. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 10, 2017, the alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(g)).

(ECF No. 9, PageID #: 88, 91, 93-94, 101-03).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Claimant asserts a single issue on appeal, which encompasses two separate but related issues: (1) whether the ALJ failed to identify substantial evidence supporting the RFC finding and (2) whether the ALJ failed to properly develop the record regarding the Claimant's physical abilities and limitations. (ECF No. 11 at 11). Essentially, Claimant takes the position that the ALJ erred in relying on the state agency reviewing physicians' opinions because they "did not make an independent assessment but only adopted the prior RFC finding." (*Id.* at 15). Based on his position that the state agency opinions do not amount to substantial evidence to support the RFC, Claimant argues that the ALJ failed to adequately develop the record because it "does not contain an opinion of a treating or examining source since March 10, 2017;" does not include "disability paperwork" from Dr. Miller, Dr. Monger, or Dr. Pleghaar; and does not include opinions from additional providers he has seen since March 9, 2017. (*Id.* at 11, 16).

The Commissioner contends that Claimant's arguments are without merit and substantial evidence supports the ALJ's decision. As to the RFC, the Commissioner asserts that "[w]hile the ALJ was not required to adopt the prior RFC finding, there was equally nothing that prevented her from finding the same RFC finding as found previously if such a finding was warranted by the record, so long as the ALJ gave Plaintiff's new application a 'fresh look,'" which the ALJ here did. (ECF No. 15 at 8-10). The Commissioner further argues that the ALJ did not err in relying on the state agency consultants' opinions because "the RFC finding need not be based on a medical opinion" and "because the period under consideration in this case was a discrete period—March 2017 to December 2019—even if the ALJ requested an examination it would not have shed further light on Plaintiff's functioning prior to December 2019 and the source would be limited to reviewing medical records from that period, which is what the State agency

11

consultants did." (*Id.* at 11). As to the "disability paperwork," the Commissioner argues there is no indication that these are treating source opinions or that they would be relevant since one was completed in connection with a private disability program and the other was after the last day insured. (*Id.* at 12). The Commissioner also argues Claimant waived his argument regarding the ALJ's failure to obtain additional opinion evidence because he did not raise the issue during the administrative process. (*Id.* at 13).

Claimant replies that in reviewing his second application, the ALJ "did not take a fresh look at the evidence" as required by *Earley v. Commissioner of Social Security*, 893 F.3d 929, 931 (6th Cir. 2018). (ECF No. 16 at 1). Specifically, Claimant contends that "[t]he ALJ's finding that the updated evidence requires a departure from the prior decision in 2017 and finding that Plaintiff had an identical RFC as found in 2017 cannot coexist" and while the ALJ "thoroughly summarized the evidence prior to and during the period of disability, the ALJ's summation does not explain how the new and material evidence leads to the identical RFC finding as contained in the 2017 decision, and it is clear that the ALJ used the prior RFC finding as the starting point for the current RFC finding." (*Id.* at 3). He further argues that he was not required to raise his argument regarding the record during the administrative proceedings. (*Id.* at 7).

**1. The ALJ did not err in relying on the state agency physicians' opinions.**

In crafting the RFC, the ALJ discussed the state agency physicians' opinions:

[O]n December 12, 2019, Gerald Klyop, M.D., from the State agency disability determinations component, reviewed the claimant's medical evidence of record and opined that there was no new and material evidence to warrant a deviation from the prior residual functional capacity findings. As such, Dr. Klyop adopted the same under AR 98-4 and the *Drummond* decision. (Ex. B4A). Then, May 28, 2020, Elizabeth Das, M.D., from the State agency disability determinations component, reviewed the claimant's medical evidence of record and concurred with the opinion of Dr. Klyop. (Ex. B6A).

12

> . . .
>
> The undersigned finds the opinions of the State agency consultative physicians and psychologists to be generally persuasive. In making these findings, the undersigned notes that the State agency consultative physicians and psychologists had the opportunity to review the comprehensive medical record through May 2020 prior to offering their respective opinions. . . . With respect for the opinions of the State agency consultative physicians, the undersigned notes that their opinions are generally consistent with the treatment notes from Van Wert Community Pain Management, which show that the claimant is on medications for peripheral neuropathy, neuritis, radiculopathy, and chronic pain syndrome. However, the same medical records show that he has been responsive to treatment and retains the ability to perform sedentary work. Therefore, based upon the foregoing, the undersigned finds the opinions of the State agency consultative physicians and psychologists to be generally persuasive.

(ECF No. 9, PageID #:100-01).

Claimant's argument regarding the state agency opinions turns on the Sixth Circuit's *Earley* decision. In *Earley*, the Sixth Circuit clarified that its previous decision in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), should not be read to hold that an ALJ is always bound by a previous disability determination. 893 F.3d at 932. Rather, "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold." 893 F.3d at 932. However, the *Earley* court noted that "[f]resh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934.

Here, while the state agency consultant opinions ultimately adopted the RFC from the 2017 ALJ decision, they did so after summarizing Claimant's medical records after the previous ALJ decision. (ECF No. 9, PageID #: 170-71, 179). Further, at the reconsideration level, the reviewer indicated "[t]he prior administrative findings are both consistent with and supported by

13

the medical evidence in file at the initial level. The claimant failed to respond to requests for additional information regarding the reported worsening. Therefore, the prior administrative findings remain consistent and supported." (*Id.* at PageID #: 182). Thus, the record indicates the reviewing consultants determined the RFC remained appropriate after reviewing the medical record. *See Jackson v. Berryhill*, No. 1:18CV421, 2019 WL 669561, at *5 (N.D. Ohio Feb. 19, 2019) ("[A]ny contention that the opinions of the state agency medical consultants were stale is without merit as the consultants reviewed the new evidence and determined that it was not sufficient to warrant a finding that was different than the finding of the prior ALJ.").

The Court rejects Claimant's argument that "[t]he ALJ's finding that the updated evidence requires a departure from the prior decision in 2017 and finding that Plaintiff had an identical RFC as found in 2017 cannot coexist." (ECF No. 16 at 3). Although the ALJ did not cite directly to *Earley*, she concluded that "there is new and material evidence showing a change in circumstances relating to a determination of the present claim that warrants a deviation from the restrictions of *Drummond* and Acquiescence Ruling 98-4(6)." (ECF No. 9, PageID #: 94). She then proceeded to detail the medical evidence for the relevant time period before adopting the same RFC as the previous ALJ based on the *new* evidence. (*Id.* at PageID #:95-99); *see McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (ALJ, who relied on state agency physicians' opinions that were allegedly "out of date and did not account for changes in [claimant's] medical condition" did not err in determining the RFC where it was clear from the decision that the ALJ considered additional evidence after the examinations occurred). The ALJ provided an explanation for why she found additional physical restrictions were not warranted, noting:

> the claimant has not had any hospitalizations due to his diabetic condition or had any episodes of acute diabetic hyper or hypoglycemia. Additionally, the medical

14

> records show that once he was placed on an insulin pump, his diabetic symptoms generally stabilized, though he continued to require monitoring. As for his back impairments, although he required injections and radiofrequency ablation, the medical records show that he did not require surgical intervention and reported significant decreases in symptoms following treatment. Although the medical records show that he uses a cane for ambulation, the treatment notes do not show that this is medically necessary or even prescribed by a physician. In terms of his hearing loss, although he has evidence of reduced hearing, the treatment notes show that he has not been placed with a hearing aid and has not had significant limitations in communicating with his physician's secondary to limited hearing.

(ECF No. 9, PageID #: 101). Despite not citing *Earley*, the ALJ complied with its requirement in that she give a "fresh look to a new application containing new evidence" before ultimately concluding that such new evidence supported adopting the same RFC. *Earley*, 894 F.3d at 931. The Court agrees with the Commissioner that based on the record, substantial evidence supports the ALJ's decision. To the extent Claimant argues a different conclusion could be reached, the Court must defer to the ALJ's decision "even if there is substantial evidence that would have supported an opposite conclusion[.]" *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### 2. The ALJ did not err by failing to expand the record.

Claimant's argument that the ALJ failed to develop the record also fails. The Court agrees with the Commissioner that Claimant waived this argument by failing to raise any issue concerning whether the record was complete at the hearing. *Velazquez v. Comm'r of Soc. Sec.*, No. 1:19-CV-2472, 2020 WL 9258393, at *9 (N.D. Ohio Oct. 8, 2020), *report and recommendation adopted*, No. 1:19-CV-2472, 2021 WL 836913 (N.D. Ohio Mar. 5, 2021). When asked by the ALJ at the hearing whether the record was complete, Claimant's counsel indicated that "[t]o my knowledge, the record's complete." (ECF No. 9 at PageID #112). By failing to object or indicate that additional evidence was needed, Claimant has waived his incomplete record argument. *See Velazquez*, 2020 WL 9258393, at *9 (finding incomplete

15

record argument forfeited because claimant could have raised it "when the ALJ asked if there was anything else to add to the record or if there were any objections to it").

In addition to being waived, Claimant's argument is also without merit. While Claimant argues the record was incomplete because it did not contain "disability paperwork," a recent opinion from a treating or examining source, or any opinion from multiple providers, "[i]n the Sixth Circuit, it is well established that the claimant—and not the ALJ—has the burden to produce evidence in support of a disability claim." *Stevenson v. Kijakazi*, No. 5:20CV2688, 2022 WL 4551590, at *13 (N.D. Ohio Sept. 29, 2022) (collecting cases). "However, there is a special, heightened duty requiring the ALJ to develop the record when the plaintiff is '(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008)). Because it is undisputed Claimant was represented by counsel at the hearing, the ALJ did not have a heightened duty to develop the record. *Id.* Rather, if Claimant wanted the ALJ to consider this additional evidence, it was his responsibility to provide such. *See Jackson*, 2019 WL 669561, at *5 ("Although Plaintiff faults the ALJ for considering the new medical evidence without an opinion, it was Plaintiff's burden to provide such an opinion. Plaintiff cannot file applications for DIB and SSI that are not supported by the opinion evidence she desires and then fault the ALJ for the lack of such evidence.").

Claimant is correct that this Court has recognized "that in some circumstances an ALJ is required to obtain a medical opinion in furtherance of her 20 CFR § 404.1545(a)(3) responsibility to develop the record." *Gonzales v. Comm'r of Soc. Sec.*, No. 3:21-CV-00093-CEH, 2022 WL 824145, at *8 (N.D. Ohio Mar. 18, 2022). Such a circumstance exists where (1) "the medical evidence requires the ALJ to make medical judgments of a claimant's functional

16

abilities by interpreting raw medical data" or (2) "a 'critical body' of the 'objective medical evidence' is not accounted for by a medical opinion and there is significant evidence of potentially disabling conditions." *Id.* Here, however, neither circumstance exists because, as discussed above, the state agency consultants reviewed the medical records for the relevant time and provided an opinion on which the ALJ relied. Thus, no heightened duty to expand the record existed and the ALJ did not err.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: 9/27/2023

s/ <i>Carmen E. Henderson</i><br>
CARMEN E. HENDERSON<br>
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).